**In re SHERPOLK JOINT VENTURE, Debtor,**

**TEXAS COMMERCE BANK–BEAUMONT, N.A. and 777 S.H. Corp., Movants,**

v.

**SHERPOLK JOINT VENTURE, Respondent.**

**Bankruptcy No. 85–06075–H3–5.**

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

May 9, 1986.

Don Russell, Elizabeth Ray, Calvin, Dylewski, Gibbs, Maddox, Russell & Verner, Houston, Tex., for debtor, Sherpolk Joint Venturer.

Kaaran E. Thomas, Vinson & Elkins, Houston, Tex., for movant, 777 S.H. Corp.

J. Hoke Peacock, II, Beaumont, Tex., for movant, Texas-Commerce Bank—Beaumont, N.A.

MEMORANDUM DECISION AND ORDER GRANTING SANCTIONS PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE AGAINST SHERPOLK JOINT VENTURE AND DANIEL DROR

EDWARD J. RYAN, Bankruptcy Judge.

On April 16, 1986, 777 S.H. Corporation filed its motion for sanctions against Sherpolk Joint Venture and its agent, consultant, (either or both), Daniel Dror, requesting that sanctions be assessed against Sherpolk Joint Venture and against Daniel Dror in the amounts of $33,277.36 expenses and $6,815.00 attorney's fees incurred by 777 S.H. Corporation.

The motion sets forth in pertinent part:

"1. Sherpolk has filed in this case, at the insistence of Mr. Dror, who is acting for his own benefit as well as Debtor's representative herein, in answer to Motion for Relief from Stay, a Plan of Reorganization and Disclosure Statement.

2. The opposition to the Motion for Relief from Stay filed at Mr. Dror's insistence, denies (in paragraph 8) that the Property has a fair market value of between $18.5 and $21 Million Dollars.

3. Contrary to Debtor's unfounded and frivolous statements, made at the insistence of Mr. Dror, there exists no equity in the property in order to pay the second lien of 777 S.H. Corporation. This fact was known to Debtor and, in fact, was testified to by Mr. Dror on the record at the trial of the Motion for Relief from Stay in this case on April 2, 1986.

4. Movant, 777 S.H. Corp. is entitled to recover its costs, including attorney's fees, on its behalf expended in this litigation. Rule 11 of the Federal Rules of Civil Procedure provides:

"Every pleading, motion and other paper of a party represented an attorney shall be signed at least one attorney of record in his individual name, whose address shall be stated ... The signature of an attorney or party constitutes a certification by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information and belief formed after reasonable inquiry it is well rounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion or other paper is signed in violation of this rule, the Court upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including reasonable attorney's fee.

5. The Advisory Committee Note to Rule 11 exhibits the intent of the drafters to inhibit the filing of frivolous lawsuits, much as the one the Court is faced with here, and imposes sanctions for the filing of such. See, e.g., *McConnell v. Critchlow*, 661 F.2d 116 (9th Cir.1981); *Lipsiguv National Student Marketing Corp.*, 663 F.2d 178 (D.D.C.1980); *Overnight Transportation Co. v. Chicago Industrial Tire Co.*, 535 F.Supp. 114 (N.D. Ill.1982).

6. The amended rule attempts to deal with the problem by building upon and expanding the equitable doctrine permitting the court to award expenses including attorney's fees, to a litigant whose opponent acts in bad faith in instituting or conducting litigation. See, e.g., *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). Greater attention by the District Court to pleading and motion abuses and the imposition of sanctions when appropriate, should discourage dilatory or abusive tactics and help to streamline the litigation process by lessening frivilous claims or defenses.

7. The words "good ground to support" pleading in the original rule were interpreted to have both factual and legal elements. See, e.g., *Heart Disease Research Foundation v. General Motors Corp.*, 15 Fed.R.Serv.2d 1517, 1519 (S.D.N.Y.1972).

8. The new language addresses the need for both pre-filing inquiry into both the facts and the law to satisfy the affirmative duty imposed by the rule. The standard is one of reasonableness under the circumstances. See *Kinee v. Abraham Lincoln Fed. Sav. & Loan Ass'n.*, 365 F.Supp. 975 (E.D.Pa.1973). This standard is more stringent than the original good faith formula and thus it is expected that a greater range of circumstances will trigger its violation. See *Nemeroff v. Abelson*, 620 F.2d 339 (2nd Cir.1980). Fed.R.Civ.P. 11 Advisory Committee Note.

9. Federal Rule 11 is carried over into the Bankruptcy Rules, Rule 9011 SIGNING AND VERIFICATION OF PAPERS. The rules annunciated above concerning federal litigation are even more significant in Bankruptcy Court where parties who are already economically disadvantaged due to the circumstances caused by the filing of the bankruptcy are put to additional costs and expenses by bad faith filings and pleadings. The sole purpose of Debtor's pleadings was to cause expense and delay to Movant for the personal benefit of Mr. Dror. Sanctions against Debtor and Mr. Dror are appropriate in this case. *In re: 1801 Restaurant, Inc.* 40 B.R. 455 (B.Ct.Md. 1984).

10. In the instant case, the conduct of Mr. Dror, in effect the party-in-interest for whose benefit the Motion for Relief from Stay was contested, clearly warrants the application of rule 11. Although Mr. Dror styled himself as "consultant" to the Debtor, his conduct and testimony throughout the hearing evidenced that it was he, rather than the Debtor, whose interest was at stake in the litigation. Mr. Dror testified under oath at trial (upon being advised of the penalties for perjury) that his opinion as to the value of the property, and, apparently, the opinion of the Debtor, differed radically from the inflated values proposed by the Debtor at trial.

11. The conduct of Debtor and Mr. Dror is even more egregious in light of Debtor's previous entry into an Agreed Order admitting that 777 S.H. did not have adequate protection and that the automatic stay had been modified. Due only to the last minute intervention of a third party, this Order was not entered prior to commencement of the present Motion for Relief from Stay. However, rather than abiding by their agreement as set forth in the Order and by their admission that Movants did not have adequate protection for their interest in the property (an admission supported by Mr. Dror's own opinion of the value of the property), Debtor and Mr. Dror chose to cause delay and additional expense to Movants for the sole purpose of furthering the interest of Mr. Dror and his corporation Denitex International.

12. This litigation has been peculiarly expensive due to the fact that both Movants reside out of the Southern District of Texas. 777 S.H. Corporation was required to fly its representative from New York, together with an appraiser. Total expenses incurred for 777 S.H. Corporation are $33,277.36 consisting of $15,411.03 for Ann Lloyd Jones (Appraiser); $17,247.21 for David Trahan (Appraiser); $454.05 copy charges; $365.87 phone charges and $127.75 miscellaneous

charges. In addition, 777 S.H. Corporation has incurred attorney's fees of $6,815.00 directly connected with their second Motion for Relief from Automatic Stay through March 31, 1985.

WHEREFORE, PREMISES CONSIDERED, 777 S.H. Corporation prays that sanctions be assessed against Sherpolk Joint Venture and against Mr. Daniel Dror in the amount of $33,277.36 expenses and $6,815.00 attorney's fees incurred by 777 S.H. Corporation and for such other and further relief as is just."

■ An evidentiary hearing on the foregoing motion for sanctions was not required. Neither Daniel Dror nor Sherpolk Joint Venture requested a hearing within the required 10 day period after 777 S.H. Corporation's motion was filed.

■ Both Daniel Dror and Sherpolk Joint Venture are accountable for their actions.

Rule 11 demonstrates the intent to inhibit the filing of frivolous lawsuits. Rule 11 imposes sanctions for the filing of such.[1]

777 S.H. Corporation's motion for sanctions against Sherpolk Joint Venture and Daniel Dror is hereby granted.

Sherpolk Joint Venture and Daniel Dror, jointly and severally, are ordered to pay 777 S.H. Corporation $33,277.36 for expenses and $6,815.00 in attorney's fees incurred by 777 S.H. Corporation as a result of Sherpolk's bad faith filing.

---

**1.** *See,* S.M. Kassin, *An Empirical Study of Rule 11 Sanctions* (Federal Judiciary Center 1985).