57 F.3d 1061
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
 UNITED STATES, Appellee,
v.
Russell DiNOVO, Defendant, Appellant.
 No. 94-1819.
 United States Court of Appeals,
First Circuit.
 June 14, 1995.
 
 Lawrence P. Murray with whom Henry F. Owens, III and Owens & Associates were on brief for appellant.
 Emily R. Schulman, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief for appellee.
 D.Mass.
 AFFIRMED.
 Before BOUDIN and LYNCH, Circuit Judges, and SCHWARZER,* Senior District Judge.
 PER CURIAM.
 
 
 1
 On December 9, 1992, officer John Albert of the Cambridge Police Department spotted appellant-defendant Russell DiNovo driving with a male passenger in a Toyota Camry traveling along Cambridge Street. When the car stopped in traffic, Albert observed that its right rear window was missing, that pieces of glass were in the car's door frame and that a screwdriver was inserted in the ignition. A check of the car's license plate number revealed that the car had been stolen earlier that day. Based on this information, police officers shortly thereafter arrested DiNovo and the passenger, Irving Lee.
 
 
 2
 During the course of the arrest, Albert noticed that both men were wearing two sets of clothes. Upon searching DiNovo, police discovered what appeared to be a homemade mask made out of a shirt sleeve. A second mask was later found in the police wagon that transported DiNovo and Lee to the police station. A search of the Camry yielded a loaded Beretta 9 millimeter semi-automatic pistol located underneath the front seat of the car. A palm print lifted from the butt of the pistol matched DiNovo's left palm.
 
 
 3
 DiNovo was charged with being a felon in knowing possession of a firearm in violation of 18 U.S.C. Sec. 922(g)(1). At trial, DiNovo took the position that the evidence did not establish that he had ever possessed the Beretta, but he was nevertheless convicted by the jury. Because DiNovo had three previous convictions for violent crimes, he was sentenced under the Armed Career Criminal Act, 18 U.S.C. Sec. 924(e), to 235 months' imprisonment. On appeal, DiNovo challenges both his conviction and sentence.
 
 
 4
 DiNovo first objects to the admission of the two pieces of cloth that the jury could reasonably have concluded were homemade masks. The masks, together with other indications that a robbery was planned, helped to supply a basis for the jury to infer a motive for DiNovo's possession of the weapon. While the masks thus fall within the literal terms of Fed. R. Evid. 404(b), DiNovo objects that the inference of a planned robbery was too thin to satisfy Rule 404(b) and the potential for prejudice too great to justify admissibility of the masks under Fed. R. Evid. 403.
 
 
 5
 The district court's judgment on issues of this kind is normally given wide latitude. See Espeaignnette v. Gene Tierney Co., Inc., 43 F.3d 1, 5 (1st Cir. 1994). In all events, the masks together with other evidence-the stolen car, the double suits of clothes-made the inference that a robbery was planned far more than mere speculation. As for the balancing of need versus prejudice under Rule 403, the government had ample need for the motive evidence in order to confirm DiNovo's connection with the weapon. The risk of unfair prejudice was quite limited compared to 404(b) cases in which evidence of actual prior crimes is regularly admitted.
 
 
 6
 DiNovo's second major objection relates to the district court's charge on the definition of possession. The district court's charge for the most part described the concepts of actual and constructive possession in terms that were either conventional or generally helpful to DiNovo. DiNovo's main complaint is that the district court refused to include in the charge certain language proposed by the defense including, most importantly, an instruction that "[m]ere incidental touching or handling of the object does not constitute possession." On appeal, DiNovo argues that this proposed request was a proper statement of the law and necessary in light of DiNovo's theory that his print on the weapon might be explained by a mere touching.
 
 
 7
 On theory of the defense grounds, DiNovo might arguably have been entitled to some instruction that made clear to the jury that not every incidental contact with the weapon automatically compelled the jury to find possession. But the language proposed by DiNovo went much further. It extended to an "incidental ... handling" of the weapon, and it essentially directed the jury that such an incidental handling would never be enough to convict. Whether the quoted language is regarded as confusing or a flat overstatement, it is plain that the district court was not obliged to give this instruction.
 
 
 8
 A defendant who requests an instruction is obliged to provide an instruction that accurately reflects the law. See United States v. Iaciofano, 734 F.2d 87, 90 (1st Cir.), cert. denied, 469 U.S. 850 (1984). The district judge is not obliged to carve down and preserve the unspoiled core of an otherwise tainted piece of fruit. In this instance, the district court, in response to DiNovo's request, modified the possession charge to say that the defendant had to possess the weapon "knowingly" and "[k]nowingly means he possessed with intent to exercise dominion and control over the firearm." Not only did the court properly reject DiNovo's overstated or confusing instruction, but it gave him the substance of what he might reasonably have requested.
 
 
 9
 DiNovo's third argument is that the district court erred when, on a request by the jury, it provided the jury with a magnifying glass-presumably sought to examine exhibits-during its deliberations. DiNovo complains that the district court should not have supplied this glass without asking the jury about its precise intended purpose and giving limiting directions as to its proper use. Improper use, DiNovo now contends, might distort the appearance of an exhibit.
 
 
 10
 At trial DiNovo's counsel objected to giving the jury the magnifying glass but never asked the judge to inquire into its intended use or give jurors any instructions, nor did DiNovo identify for the district court any specific potential misuse of the magnifying glass against which precautions should be taken. Jury management matters are normally within the district court's sound discretion, and if DiNovo wanted questions to be asked or limitations to be imposed, he was obliged to say this to the district judge. There is certainly no plain error in the district judge's handling of the matter.
 
 
 11
 Finally, DiNovo objects to a procedural ruling pertaining to his sentencing. DiNovo received the pre-sentence report on April 19, 1994, was given two continuances at his own request, and finally was scheduled for sentencing on July 13. On that date, DiNovo's CJA counsel moved to continue the sentencing and withdraw because of DiNovo's dissatisfaction with counsel's representation and DiNovo's assertion that he might after investigation wish to challenge the validity of certain of the prior convictions listed in the pre-sentence report.
 
 
 12
 Custis v. United States, 113 S. Ct. 1732 (1994), narrowed the grounds on which a defendant may at sentencing attack a prior conviction under the Armed Career Criminal Act. When at sentencing DiNovo expressed a desire to have his earlier convictions investigated, the district court inquired of defense counsel and counsel explained that under Custis he believed that DiNovo had no basis to attack at sentencing any of his prior convictions. It was at that point that the district court refused to replace defense counsel or to continue the sentencing for a third time.
 
 
 13
 Neither in the district court nor in this court has DiNovo explained what purpose would have been served by a continuance. He does not claim that any of the prior convictions were obtained without representation by counsel nor has he pointed to any other reason for delaying his sentencing except a generalized desire to investigate his prior convictions. Under these circumstances one can hardly say that the district court abused its discretion in refusing a third continuance of the sentencing or that DiNovo has been prejudiced by the district court's refusal.
 
 
 14
 In the closing paragraphs addressed to this issue, DiNovo's brief on appeal says that his counsel at sentencing misread Custis and that DiNovo was deprived of effective assistance of counsel at sentencing. It is by no means clear on this record that defense counsel misunderstood the limitations imposed by Custis or that, if he did misunderstand them, his misunderstanding had any practical importance in this case. In all events, the ordinary rule is that attacks on the adequacy of trial counsel are not normally considered on direct appeal, but are reserved for proceedings under 28 U.S.C. Sec. 2255. See United States v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993), cert. denied, 114 S. Ct. 1839 (1994). This case illustrates the reasons for the rule, and we invoke it here.
 
 
 15
 Affirmed.
 
 
 
 *
 Of the District of Northern California, sitting by designation